**WEST COAST TRUCK LINES, INC., an Oregon corporation, Plaintiff–Appellant,**

v.

**ARCATA COMMUNITY RECYCLING CENTER, INC., a California corporation, Defendant–Appellee.**

No. 87–1868.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 10, 1987.

Decided May 23, 1988.

Miles L. Kavaller, Beverly Hills, Cal., for plaintiff-appellant.

Steven Gompertz, Arcata, Cal., for defendant-appellee.

Before SCHROEDER, PREGERSON and BRUNETTI, Circuit Judges.

PREGERSON, Circuit Judge:

The district court granted summary judgment for appellee Arcata Community Recycling Center, Inc. (the Arcata Recycling Center). The court held that rates for the transportation of recyclable materials need not be published in a motor carrier's tariff pursuant to section 10733 of the Interstate Commerce Act. 49 U.S.C. § 10733 (1982). West Coast Truck Lines, Inc. (West Coast) appeals, contending that the district court misconstrued section 10733. We affirm.

I

BACKGROUND

A. *Statutory Background*

The Interstate Commerce Act, 49 U.S.C. §§ 10101–11917 (1982 & Supp. III 1985), places several limitations on motor common carriers[1] to ensure that they do not favor some customers and discriminate against others. First, carriers are required to file their transportation rates with the Interstate Commerce Commission (ICC) in the form of a tariff.[2] 49 U.S.C. § 10762(a)(1) (1982). Second, carriers are prohibited from transporting materials at rates other than their tariff rates. *Id.* § 10761(a).

---

[1]. A "motor common carrier" is "a person holding itself out to the general public to provide motor vehicle transportation for compensation over regular or irregular routes, or both." 49 U.S.C. § 10102(14) (1982).

[2]. A "tariff" is the document "[a] motor common carrier shall publish and file with the Commission ... containing the rates for transportation it may provide under this subtitle." § 10762(a)(1).

Third, carriers are commanded to treat like customers alike. *See id.* § 10741 (carriers discriminate when they provide similar services for different compensation).

To promote compliance with the above provisions of the Interstate Commerce Act, the Supreme Court has stated that carriers have "not only the right but also the duty to recover [their] proper charges for services performed." *Southern Pac. Transp. Co. v. Commercial Metals Co.*, 456 U.S. 336, 343, 102 S.Ct. 1815, 1821, 72 L.Ed.2d 114 (1982). In practical terms, this means that carriers may not enter into contracts to charge less than their tariff rates. *See Farley Transp. Co. v. Santa Fe Trail Transp. Co.*, 778 F.2d 1365, 1372 (9th Cir. 1985); *Louisville & Nashville R.R. Co. v. Mead Johnson & Co.*, 737 F.2d 683, 689 (7th Cir.), *cert. denied*, 469 U.S. 982, 105 S.Ct. 386, 83 L.Ed.2d 320 (1984) (no act or omission by a carrier can prevent the enforcement of the tariff rate). If a carrier does enter into a contract to charge a shipper less than the applicable tariff rate, the carrier may later sue the shipper to recover the amount "undercharged." *Sea–Land Service, Inc. v. Murrey & Son's Co.*, 824 F.2d 740, 742 (9th Cir.1987). In an undercharge collection suit, the shipper generally cannot invoke the contract principle of estoppel as a defense against the carrier. *United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 76 n. 20, 77 S.Ct. 161, 171 n. 20, 1 L.Ed.2d 126 (1956) (interpreting an earlier version of the Interstate Commerce Act); *see Sea–Land Service, Inc.*, 824 F.2d at 742 ("a carrier can sue to recover charges listed in the tariff *regardless of an agreement to accept a lesser rate*") (emphasis added).[3]

---

[3]. Recently, the ICC adopted a new policy stating that it will consider equitable defenses to undercharge claims in some cases. *National Industrial Transportation League—Petition to Institute Rulemaking on Negotiated Motor Common Carrier Rates; Ex Parte No. MC–177*, 1986 Fed. Carr.Cas. (CCH) 47,348 (Oct. 14, 1986). The ICC recommends that courts refer certain cases to the agency under the doctrine of primary jurisdiction. In those cases, the ICC (not the court) will determine whether the collection of undercharges would constitute an "unreasonable

The rule that tariff rates must be strictly enforced is a general rule. There are exceptions. For example, carriers do not have to charge their tariff rates when they contract to transport materials for government shippers—whether municipal, state, or federal. 49 U.S.C. § 10721 (1982); *see United States v. Western Pac. R.R. Co.,* 352 U.S. at 76 & n. 20, 77 S.Ct. at 171 & n. 20 (carriers may agree to charge the government reduced rates, and the government may estop carriers from charging tariff rates when there is a contrary agreement). The Arcata Recycling Center argues that section 10733 of the Interstate Commerce Act presents another exception to the rule that carriers may charge only their tariff rates.

Section 10733 was added to the Interstate Commerce Act in 1980 as part of a congressional program to deregulate the trucking industry. Motor Carrier Act of 1980, Pub.L. No. 96–296, § 32, 94 Stat. 793, 824 (codified at 49 U.S.C. § 10733); *see* H.R.Rep. No. 1069, 96th Cong., 2d Sess. 1–3, *reprinted in* 1980 U.S.Code Cong. & Admin.News 2283, 2283–85. Section 10733 states that "[a] motor carrier ... may provide transportation of recyclable materials without charge or at a reduced rate." 49 U.S.C. § 10733.

On its face, and out of context, section 10733 is susceptible to two conflicting interpretations. On the one hand, section 10733 may be read as allowing motor carriers to ship recyclable materials at rates lower than the carrier's tariff rates. Under this interpretation, carriers do not have to file, in their tariffs, rates for the transportation of recyclable materials. The Arcata Recycling Center asserts that this is the correct interpretation of section 10733.

On the other hand, section 10733 could be read as allowing carriers to ship recyclable materials at rates lower than the rates for non-recyclable materials. For example,

section 10733 could mean that carriers may charge less to ship recyclable bottles than to ship non-recyclable bottles. Under this interpretation, carriers still have to file, in their tariffs, rates for recyclable materials. West Coast contends that this is the correct interpretation of section 10733.

This case requires that we determine which of the two suggested interpretations of section 10733 accurately reflects congressional intent.

### B. *Facts*

West Coast is a motor common carrier. From September 6, 1983 to December 18, 1984, West Coast transported twenty-four shipments of recyclable paper scrap or waste for the Arcata Recycling Center. At that time, West Coast's tariff on file with the ICC contained rates for the transportation of scrap paper. Despite the existence of an applicable tariff rate, West Coast offered and agreed to charge the Arcata Recycling Center reduced rates for the twenty-four shipments. The total difference between West Coast's scrap paper tariff rate and the contract rates actually charged for the twenty-four shipments was $2,534.07.

Three years after completing the Arcata Recycling Center's shipments, West Coast brought suit in district court to collect the $2,534.07 it "undercharged" the Arcata Recycling Center. West Coast argued that it had a legal duty to charge the Arcata Recycling Center the scrap paper tariff rate, rather than the contract rate, for the twenty-four shipments. Failure to collect the full amount of the tariff rate, West Coast contended, would violate the Interstate Commerce Act.

The Arcata Recycling Center moved for summary judgment. It argued that section 10733 of the Interstate Commerce Act allows motor carriers to charge reduced

---

practice" under the Interstate Commerce Act. *Id.* at 47,352–53; *see* 49 U.S.C. §§ 10701, 10704 (1982) (setting forth the ICC's authority to declare a practice unreasonable).

West Coast challenges the validity of the ICC's new policy. We need not decide whether the ICC's policy accords with its statutory authority.

Because we hold that a motor carrier may charge reduced rates for the transportation of recyclable materials without filing those rates in its tariff, motor carriers no longer have reason to bring undercharge collection claims against shippers of recyclable materials.

rates for the transportation of recyclable materials without ever filing the reduced rates in the carrier's tariff. Consequently, the Arcata Recycling Center asserted that it was entitled to rely on the transportation rates West Coast actually negotiated, charged, and collected.

The district court found that rates for the transportation of recyclable materials need not be published in a motor carrier's tariff pursuant to section 10733. The court therefore found that the Arcata Recycling Center was entitled to rely on West Coast's negotiated rates. Accordingly, the district court granted the Arcata Recycling Center's motion for summary judgment. We affirm.

## II

### STANDARD OF REVIEW

Interpretation of a statute involves a question of law subject to de novo review. *Trustees of Amalgamated Ins. Fund v. Geltman Indus., Inc.*, 784 F.2d 926, 929 (9th Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 90, 93 L.Ed.2d 42 (1986).

## III

### DISCUSSION

■ This is a case of first impression concerning the meaning of section 10733 of the Interstate Commerce Act. Section 10733 is entitled "Rates for transportation of recyclable materials." It reads in full:

(a) A motor carrier of property providing transportation subject to the jurisdiction of the Commission under subchapter II of chapter 105 of this title may provide transportation of recyclable materials without charge or at a reduced rate.

(b) In this section, "recyclable materials" means waste products for recycling or reuse in the furtherance of recognized pollution control programs.

49 U.S.C. § 10733 (1982). We must decide whether section 10733 permits a motor carrier to charge reduced rates for the transportation of recyclable materials without filing those rates in the carrier's tariff.

In construing statutes, our goal is to "ascertain the intent of Congress and to give effect to legislative will." *Turner v. McMahon,* 830 F.2d 1003, 1007 (9th Cir. 1987) (citation omitted). Congressional intent "may be ascertained from the plain language of the statute, or it may be necessary to look to the legislative history for guidance." *In re Cecchini,* 780 F.2d 1440, 1442 (9th Cir.1986). In interpreting the plain language of a particular statutory provision, we examine the statutory scheme as a whole. *Moorhead v. United States,* 774 F.2d 936, 941 (9th Cir.1985). As indicated above, the plain language of section 10733 when read in isolation does not answer the question whether Congress intended to allow a motor carrier to reduce its rates for the transportation of recyclable materials without filing the reduced rates in its carrier's tariff. When section 10733 is read in the context of the statutory scheme as a whole, however, it appears that Congress did intend section 10733 to act as an exception to the general rule that a carrier may charge only its filed tariff rates for the transportation of materials.

The general tariff rate filing requirements of the Interstate Commerce Act are contained in subchapter IV of the Act, entitled "Tariffs and Traffic." 49 U.S.C. §§ 10761–10766 (1982). Section 10762 sets forth "General tariff requirements." § 10762. "A motor common carrier shall publish and file with the Commission tariffs containing the rates for transportation it may provide under this subtitle." § 10762(a)(1). Section 10761 then prohibits a motor common carrier from transporting freight at rates other than its filed tariff rates. § 10761(a).

In section 10761, Congress specifically notes that exceptions may be established to the rule that a carrier must charge only its filed tariff rates. Section 10761 states that *"[e]xcept as provided in this subtitle,* a carrier providing transportation ... shall provide that service only if the rate for the transportation ... is contained in a tariff...." *Id.* (emphasis added).

Subchapter II entitled "Special Circumstances," 49 U.S.C. §§ 10721–10735 (1982), is part of the larger *subtitle* within which exceptions may be established. Subtitle IV—Interstate Commerce, 49 U.S.C. §§ 10101–11917 (1982 & Supp. III 1985). Although titles cannot expand the meaning of a statute, they may be helpful in interpreting ambiguities within the context of a statute. *Russ v. Wilkins,* 624 F.2d 914, 922 (9th Cir.1980), *cert. denied,* 451 U.S. 908, 101 S.Ct. 1976, 68 L.Ed.2d 296 (1981). The title "Special Circumstances" implies that Congress considered the provisions of subchapter II "special" and therefore not necessarily governed by the general rules stated elsewhere in the Act. Thus, the title "Special Circumstances" indicates that subchapter II would be a reasonable place for Congress to codify exceptions to the general tariff rate filing requirements.

Courts have acknowledged that Congress has, in fact, placed at least one exception to the general tariff rate filing requirements in subchapter II. Section 10721 allows common carriers to "transport property for the United States Government, a State, or municipal government *without charge or at reduced rates.*" 49 U.S.C. § 10721(b)(1) (emphasis added). Section 10721 has been interpreted to allow carriers and government shippers to negotiate and enforce rates lower than the carrier's tariff rates. *See United States v. Western Pac. R.R. Co.,* 352 U.S. 59, 76, 77 S.Ct. 161, 171, 1 L.Ed.2d 126 (1956) (interpreting an earlier section of the Act, which was later amended and recodified as section 10721); *Jetco, Inc. v. United States,* 11 Cl.Ct. 837, 845 (1987) ("When conducting shipping business with the government a common carrier does not have to abide by its published (tariff) rates."). Thus, pursuant to section 10721, when a motor carrier contracts to ship government property, it may agree to charge reduced rates without filing those rates in its carrier's tariff.

When Congress enacted section 10733 regarding the transportation of recyclable materials, the section at issue in this case, it chose to codify section 10733 alongside section 10721 in subchapter II. Motor Carrier Act of 1980, Pub.L. No. 96–296,

§ 32(a), 94 Stat. 793, 824. By so doing, Congress labeled the transportation of recyclable materials another "special circumstance." In drafting section 10733, Congress chose to track the language of section 10721, an acknowledged exception to the general tariff rate filing requirements. Section 10733 states that carriers may "provide transportation of recyclable materials *without charge or at a reduced rate.*" 49 U.S.C. § 10733(a) (emphasis added).

The placement of section 10733 alongside section 10721 in subchapter II, and the use of almost identical language in the two sections, supports the argument that Congress intended section 10733, like section 10721, to function as an exception to the general tariff rate filing requirements. Under this interpretation, a motor carrier would be allowed to charge reduced rates for the transportation of recyclable materials without filing those rates in its carrier's tariff. The argument for this interpretation becomes even stronger when sections 10721 and 10733 are compared with two other provisions in subchapter II that were enacted during the same year as section 10733.

Section 10733 was enacted in 1980. Motor Carrier Act of 1980, Pub.L. No. 96–296, § 32(a), 94 Stat. 793, 824. Section 10733 (like section 10721) authorizes carriers to charge "reduced rates" without mentioning the general tariff rate filing requirements. 49 U.S.C. § 10733. In contrast, two other sections enacted in 1980 authorize reduced or privately negotiated rates, but explicitly subject those rates to the general tariff rate filing requirements. *See* 49 U.S.C. §§ 10730(b), 10735.

Section 10730(b), regarding rates and liability, was enacted along with section 10733 as part of the Motor Carrier Act of 1980. Pub.L. No. 96–296, § 12, 94 Stat. 793, 802. Section 10730(b) authorizes carriers to establish reduced rates that limit carrier liability for property damaged in transport. 49 U.S.C. § 10730(b). These rates may reflect negotiated agreements between carriers and shippers. *Id.* Thus, like sections 10721 (government property) and 10733 (re-

cyclable materials), section 10730(b) gives carriers greater rate flexibility. *See* H.R. Rep. No. 1069, 96th Cong., 2d Sess. 4, 25–26, *reprinted in* 1980 U.S.Code Cong. & Admin.News 2283, 2307–08. Unlike sections 10721 or 10733, however, section 10730(b) explicitly states that the more flexible rates it allows are "subject to the provisions of this chapter (*including, with respect to a motor carrier, the general tariff requirements of section 10762 of this title*)." 49 U.S.C. § 10730(b) (emphasis added).

Section 10735, regarding the transportation of household goods, was enacted only three months after section 10733. Household Goods Transportation Act of 1980, Pub.L. No. 96–454, § 4(a), 94 Stat. 2011, 2012 (enacted as § 10734, and later renumbered § 10735 by Pub.L. No. 98–554, Title II, § 227(b)(1), 98 Stat. 2829, 2852 (1984)). Like section 10730(b) regarding rates and liability, section 10735 allows greater rate flexibility, yet reiterates the applicability of the general tariff rate filing requirements to the more flexible rates. Section 10735 allows carriers to charge rates based on a "written, binding estimate of charges for providing transportation." 49 U.S.C. § 10735(a). It also allows carriers to establish rates that include a penalty provision for later pick up or delivery of the household goods. Nonetheless, section 10735 states that these rates will be "subject to the provisions of this chapter (*including, the general tariff requirements of section 10762 of this title*)." *Id.* (emphasis added).

■ When some statutory provisions expressly mention a requirement, the omission of that requirement from other statutory provisions implies that Congress intended both the inclusion of the requirement *and* the exclusion of the requirement. *See, e.g., Arizona Elec. Power Co-op v. United States,* 816 F.2d 1366, 1375 (9th Cir.1987) (inclusion of a test in some sections of the Interstate Commerce Act implied the exclusion of that test from another section of the Act). Under this principle of statutory construction, Congress intentionally reiterated the general tariff rate

filing requirements in sections 10730 (rates and liabilities) and 10735 (household goods) and intentionally omitted any mention of those requirements from sections 10721 (government property) and 10733 (recyclable materials). The lack of any mention of the general tariff rate filing requirements in section 10721 has already been interpreted to mean that a motor carrier may charge reduced rates for the transportation of government property without filing those rates in its carrier's tariff. *See United States v. Western Pac. R.R. Co.,* 352 U.S. 59, 76, 77 S.Ct. 161, 171, 1 L.Ed.2d 126 (1956) (interpreting an earlier section of the Act, which was later amended and recodified as section 10721); *Jetco,* 11 Cl.Ct. at 845 ("When conducting shipping business with the government a common carrier does not have to abide by its published (tariff) rates."). Section 10733 should similarly be interpreted to allow a motor carrier to charge reduced rates for the transportation of recyclable materials without filing those rates in its carrier's tariff.

Thus, the overall statutory scheme reveals the unambiguous intent of Congress that section 10733 should function as an exception to the general tariff rate filing requirements of the Interstate Commerce Act. In summary, the placement of section 10733 in the "Special Circumstances" subchapter (subchapter II) of the Act indicates that Congress did not necessarily want to subject the transportation of recyclable materials to the generally applicable rules of the Act. The explicit reiteration of the general tariff rate filing requirements in some sections of the "Special Circumstances" subchapter implies that Congress meant to subject *those* sections of the subchapter to the tariff rate filing requirements. The omission of any mention of the tariff rate filing requirements from sections 10721 and 10733 of subchapter II reveals that Congress intended to exempt those sections from the general tariff rate filing requirements. Courts have already construed section 10721 as allowing carriers to transport government property at reduced rates without filing those rates in their carrier's tariff. Accordingly, we hold that section 10733 exempts motor carriers

from the general tariff rate filing requirements of section 10761 and 10762 of the Interstate Commerce Act when they contract to transport recyclable materials pursuant to section 10733. Therefore, a motor carrier may charge reduced rates for the transportation of recyclable materials without filing those rates in its carrier's tariff.

The legislative history of section 10733 confirms our interpretation of that section. When looking to the legislative history for guidance in statutory interpretation, we consider the "time and circumstances surrounding the enactment as well as the object to be accomplished by it." *Callejas v. McMahon*, 750 F.2d 729, 731 (9th Cir.1984).

Section 10733 was passed during an era of deregulation. The Motor Carrier Act of 1980, which enacted section 10733, reflected congressional sentiment that it was time to change the character of regulations governing the trucking industry. Pub.L. No. 96–296, 94 Stat. 793 (codified as amended in scattered sections of 49 U.S.C.). After using the Interstate Commerce Act to regulate the trucking industry for forty-five years with little or no amendment, Congress recognized that it was time to "overhaul outmoded and archaic regulatory mechanisms." H.R.Rep. No. 1069, 96th Cong., 2d Sess. 2, *reprinted in* 1980 U.S. Code Cong. & Admin.News 2284.

In 1980, Congress expressed objectives that were different from those expressed in earlier eras. The longstanding objective behind the tariff rate filing requirements of sections 10761 and 10762, and their strict enforcement by the courts, had been to "eliminate [from the transportation industry] the discrimination and favoritism that had plagued the railroad industry in the late 19th century". *Southern Pac. Transp. Co. v. Commercial Metals Co.*, 456 U.S. 336, 344, 102 S.Ct. 1815, 1821, 72 L.Ed.2d 114 (1982). In 1980, however, Congress focused on the objectives of "increasing competition and reducing unnecessary federal regulations." H.R.Rep. No. 1069, 96th Cong., 2d Sess. 3, *reprinted in* 1980 U.S.Code Cong. & Admin.News 2285. One

of the means chosen to accomplish the 1980 objectives was price flexibility. *Id.*

The legislative history of section 10733 clearly indicates that Congress was more concerned about the need for price flexibility to promote the recycling industry than about the possibility that motor carriers might discriminate among shippers of recyclable materials. Congress explicitly stated that *"[t]his section is meant to be permissive for motor carriers."* H.R.Rep. No. 1069, 96th Cong., 2d Sess. 45, *reprinted in* 1980 U.S.Code Cong. & Admin.News 2327 (emphasis added). Thus, Congress not only omitted any mention of the tariff rate filing requirements from the text of section 10733, it also included an affirmative statement in the legislative history that section 10733 should operate as a permissive grant of authority to motor carriers.

Instead of subjecting rates for the transportation of recyclable materials to the general tariff rate filing requirements, Congress imposed a new requirement on those rates. Section 10733 allows motor carriers to "transport recyclable materials without charge or at reduced rates *to the extent that the service is provided to further recognized pollution control programs." Id.* (emphasis added).

In the field of recycling, it is reasonable for Congress to find that the need for price flexibility outweighs concerns regarding discrimination or favoritism. The recycling industry is still young and may need price flexibility to encourage its development. Furthermore, many recycling centers, such as the Arcata Recycling Center, are non-profit organizations that do not compete with one another in the same manner as for-profit businesses. Finally, if discrimination among shippers of recyclable materials becomes a problem, Congress can always amend section 10733 to include statements such as those included in sections 10730(b) and 10735 of the Act—that the reduced rates permitted by section 10733 must also be subject to the general tariff requirements of section 10762.[4] *See* 49 U.S.C. §§ 10730(b), 10735.

---

**4.** Moreover, the general tariff rate filing requirements of sections 10761 and 10762 are not the

## IV

## CONCLUSION

We hold that section 10733 exempts motor carriers from the general tariff rate filing requirements of section 10761 and 10762 of the Interstate Commerce Act. Therefore, a motor carrier may charge reduced rates for the transportation of recyclable materials pursuant to section 10733 without filing those rates in its carrier's tariff.

West Coast charged the Arcata Recycling Center reduced rates for the transportation of recyclable materials and did not file those rates in its carrier's tariff. The district court correctly held that this practice is permissible under section 10733 of the Act. The Interstate Commerce Act does not require West Coast to file an undercharge collection claim against the Arcata Recycling Center because West Coast did not have to charge its tariff rates for Arcata's twenty-four shipments.

 Absent any legal requirement that West Coast bring an undercharge collection claim, West Coast is bound by the contract it made and executed with the Arcata Recycling Center. West Coast has failed to present any arguments as to why the normal contract principles of estoppel should not prevent West Coast from claiming that the Arcata Recycling Center owes additional money for its twenty-four shipments.[5] We therefore find that the district

court properly granted summary judgment for the Arcata Recycling Center.

## JUDGMENT AFFIRMED.

---

only statutory means of guarding against discrimination among shippers. We hold that section 10733 exempts motor carriers of recyclable materials from the tariff rate filing requirements of section 10761 and 10762 of the Interstate Commerce Act. Because discrimination is not an issue in this case, we express no opinion as to the relationship between section 10733 and section 10741 of the Act. Section 10741 generally prohibits discrimination by common carriers. 49 U.S.C. § 10741. Carriers discriminate when they charge one shipper different compensation from that charged another shipper for "performing a like and contemporaneous service in the transportation of a like kind of traffic under substantially similar circumstances." § 10741(a). Arguably, a motor carrier could be liable for a violation of section 10741 if that carrier discriminates among similarly situated shippers of recyclable materials.

5. West Coast argues on appeal that evidence regarding an oral agreement to charge the reduced rates was inadmissible hearsay. This argument is without merit. Evidence of an oral agreement is not offered to prove the truth of the matter stated. Rather, such evidence is offered simply to show that the statement was made. It is well established that statements which may themselves affect the legal rights of the parties are not considered hearsay under the Federal Rules of Evidence. Fed.R.Evid. 801(c) advisory committee's note. Furthermore, West Coast billed and accepted payment from the Arcata Recycling Center at the reduced rates. Thus, evidence of the oral agreement was not the only evidence that West Coast agreed to charge reduced rates.