**ATLANTIS EXPRESS, INC., Plaintiff,**

v.

**UNICORN TRANSPORTATION SYSTEMS, INC., Defendant.**

**ATLANTIS EXPRESS, INC., Plaintiff,**

v.

**STANDARD TRANSPORTATION SERVICES, INC., Defendant.**

**Civ. Nos. 4–90–232, 4–90–233.**

United States District Court, D. Minnesota, Fourth Division.

March 19, 1991.

136

Thomas E. Wolff, James R. Roy, Snelling Christensen & Briant, Minneapolis, Minn., for plaintiff.

Byron Donn Olsen, Felhaber Larson Fenlon & Vogt, Barbara Resanovich Kueppers, Kueppers Law Office, Minneapolis, Minn., for defendants.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

Atlantis Express, Inc. (Atlantis), brought actions for recovery of undercharges against two ICC licensed brokers, Unicorn Transportation Systems, Inc. (Unicorn), and Standard Transportation Services, Inc. (Standard). The cases were brought in state court and removed to this court, on the basis of federal jurisdiction pursuant to 28 U.S.C. § 1337(a). The parties agreed that the two cases should be heard together because of sufficient similarities of fact and law. Defendants were permitted to amend their answers to add counterclaims,

alleging that Atlantis was negligent in failing to file its transportation rates with the Interstate Commerce Commission (ICC), breached its oral contracts with defendants to provide transportation at the rates agreed upon, and that if defendants are liable for undercharges to Atlantis they are entitled to various setoffs. Before the court are cross-motions of the parties for summary judgment on Atlantis' complaint.[1]

## I.

The relevant facts are mostly not disputed by the parties. Unicorn and Standard are ICC licensed brokers for transportation services. Atlantis contracted with both defendants to provide carrier services. Defendants arranged for shippers (consignors) to have property transported by Atlantis. The bill of lading for each shipment named the consignor as shipper, but the freight invoices stated that payment should be remitted to Unicorn or Standard, as the case may be. The rate was negotiated between Atlantis and Unicorn or Standard. After an audit performed by Southwest Tariff Auditing, Inc., *see* Adrienne Lund affidavit, Atlantis demanded payment for undercharges from Unicorn and Standard based on the difference between the rates they had negotiated and the rates Atlantis had filed with the ICC. Unicorn and Standard refused to pay and these suits ensued.

The only relevant fact disputed by the parties is whether Atlantis provided services to Unicorn and Standard pursuant to Atlantis' contract carrier authority or its common carrier authority. Defendants argue that there was an oral agreement between themselves and Atlantis that the shipments were contract carriage; Atlantis denies such an agreement. The parties agree that there was no written agreement among them showing that Atlantis was operating as a contract carrier.

## II.

Atlantis argues that this is a straightforward case involving the application of the "filed rate doctrine." *See Maislin Indus. v. Primary Steel, Inc.,* —— U.S. ——, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990). According to Atlantis, each defendant paid less than the lawful filed rate for transportation services, as documented by its auditing firm, and is liable for the difference between the filed rate and the actual rate paid. Atlantis also seeks prejudgment interest from the last date of the shipments involved.

Unicorn and Standard respond with several arguments. They argue that they were mere brokers, not shippers, and cannot be held liable for any undercharges under the filed rate doctrine. They contend that this position is strengthened by the fact that they are not named as "shipper" on any of the bills of lading in these cases. Unicorn and Standard also argue that oral agreements with Atlantis created contract carrier relationships under which they cannot be held liable for the difference between the negotiated rates and the filed rates. They argue that the statute of limitations bars recovery for several of plaintiff's claimed undercharges. They argue that as brokers they are entitled to "just compensation" for arranging transportation, and that if there were undercharges pursuant to the filed rate doctrine they deserve the money, not Atlantis, as compensation for brokerage. They argue that even if they are potentially liable for the undercharges, Atlantis' filed rates are unreasonably high; they request referral to the ICC to determine rate reasonableness. Finally, they argue that it would be unfair to charge them with prejudgment interest.

Atlantis replies that defendants waived the right to request referral to the ICC by failing to bring their request within the period prescribed by the scheduling order in these cases. Atlantis argues that the law does not allow oral agreements to cre-

---

1. Defendants' motion for summary judgment seeks "dismissal of this action with prejudice." Defendants' Notice of Motion and Motion for Summary Judgment, at 1. Defendants do not request judgment on their counterclaims against Atlantis. However, since the damages alleged in the counterclaims are equal to the amount claimed by the plaintiff (plus costs and attorney fees), judgment on the complaint requires judgment on the counterclaims.

ate a contract carrier relationship; the agreement must be in writing. Atlantis contends that defendants' equitable affirmative defenses are precluded by statute, 49 U.S.C. § 10761, and by the Supreme Court, *Maislin,* 110 S.Ct. at 2766; defendants have not argued their equitable defenses in these motions. Atlantis concedes that certain shipments are barred by the statute of limitations; accordingly Atlantis has revised its requested relief.[2] Finally, Atlantis contends that the defendants have provided no rational or evidentiary basis to award them the undercharges as so-called brokers' just compensation.

### III.

■ Resolution of this case follows from the Supreme Court's decision in *Maislin, supra,*[3] In that case, the Court reaffirmed a "rigid approach" to the filed rate doctrine, *id.,* 110 S.Ct. at 2766. The Court held that the rate of a carrier duly filed with the ICC is the only lawful rate it can charge, and that "[d]eviation from it is not permitted upon any pretext." *Id., quoting Louisville & Nashville R. Co. v. Maxwell,* 237 U.S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed. 853 (1915). When a carrier negotiates a lower rate than the filed rate with a shipper, the carrier may subsequently recover the undercharges. This rule is cut-and-dried; equitable defenses cannot be raised against a suit to collect the filed tariff. *Maislin,* 110 S.Ct. at 2766.

■ In the present case, Unicorn and Standard are liable to Atlantis for the undisputed differences between the filed rates and the actual charged rates. Although Unicorn and Standard are licensed brokers, not directly shippers, they assumed the consignors' principal payment obligation to Atlantis by billing and collect-

ing freight charges and are liable for the payments due Atlantis. *See Sovran Bank/Southeast v. ICB Transportation Service, Inc.,* 1990 Fed.Carr. Cases at ¶ 83,569 (E.D.Tenn. July 13, 1990); 49 C.F.R. § 1045.10. Each broker would agree to one rate for a shipment with Atlantis, to be paid by the broker to Atlantis, then negotiate a separate (higher) rate with the shipper to be paid by the shipper to the broker. The spread between these rates constituted the broker's commission. *See* Folsom aff., Roberts aff. This arrangement distinguishes the present case from *Motor Carrier Audit & Collection Co. v. Freight Line, Inc.,* Civ. No. CA3–87–2503–R (N.D.Tex.1988), and its progeny, as cited by defendants. In *Freight Line,* there was no evidence that the broker agreed to pay the shipping charges for transportation of goods of which it was neither the consignor nor the consignee. In the present case, defendants were the responsible parties as the "bill to" parties on the freight invoices, and they in fact paid the original freight bills. They should be liable to Atlantis for undercharges in those bills.

■ Without citing legal support, defendants argue that even if they are liable to Atlantis for undercharges, they should not have to pay because the amount of the undercharges claimed by Atlantis coincides with their typical and reasonable compensation for brokerage services. They claim that this is "just compensation" for their services. This claim is without merit. Borrowing language from the fifth amendment "takings" clause (i.e., "just compensation"), Unicorn and Standard apparently assert some property right in the discount below the lawful filed rates they arranged for the shipments they brokered. As *Maislin* makes clear, however, every entity liable

---

**2.** At oral argument the parties agreed upon a calculation of the revised amount. The proper amounts sought by Atlantis should be: against Unicorn—$4,461.03; against Standard—$3,015.87.

**3.** As a preliminary matter, it should be noted that defendants' argument that their relationships with Atlantis was under contract carrier authority is without merit. There could be no contract carrier relationship between Unicorn

and Atlantis or between Standard and Atlantis because any such agreement was not in writing. *See* 49 C.F.R. § 1053.1; *Gale v. Norwesco, Inc.,* Civ. No. 4–90–156, 1990 WL 284504 (D.Minn., Dec. 11, 1990). This conclusion is not now affected by the ICC announcement that it is instituting proceedings concerning this regulation, ICC Decision Ex Parte No. MC–198 (Feb. 20, 1991).

on a shipment negotiates such discounts at its own risk. If brokers could escape from liability for such discounts under circumstances such as those in the present case, the filed rate doctrine would be vitiated. The defendants are not entitled to any set-off, deduction or elimination of undercharge liability to Atlantis on this basis.[4]

■ Defendants request referral to the ICC on the issue of the reasonableness of Atlantis' filed rates. However, this request is both untimely, having been made after the scheduling cutoff for motions, and unsupported by relevant evidence.[5] Under these circumstances, defendants' request for referral to the ICC should be denied. *See Bergquist, Trustee v. La-Salle–Deitch Company,* 127 B.R. 620 (D.Minn.1991).

■ Atlantis has requested prejudgment interest from the last date of the shipments involved. "[P]rejudgment interest is normally awarded in claims for undercharges." *Inman Freight Systems, Inc. v. Olin Corp.,* 807 F.2d 117 (8th Cir.1986). The damages suffered by Atlantis were capable of determination with reasonable accuracy as of the date of the last shipment involved. On the other hand, Unicorn and Standard could not necessarily have foreseen the conclusions reached by the Supreme Court in *Maislin,* and could reasonably have expected negotiated rates to have been upheld. Under all the circumstances, it would be fair to award prejudgment interest to Atlantis from the date the complaint was filed.

Accordingly, based upon the above, and all the files, records, and proceedings herein, IT IS HEREBY ORDERED that:

1. The motion by Atlantis Express, Inc. for summary judgment is granted.

2. The motions by Unicorn Transportation Systems, Inc., and Standard Transportation Services, Inc., for summary judgment are denied.

3. The counterclaims by defendants are dismissed.

4. Judgment shall be entered in favor of Atlantis Express, Inc. against Unicorn Transportation Systems, Inc. in the amount of $4,461.03 plus $312.27 prejudgment interest for a total of $4973.30.

5. Judgment shall be entered in favor of Atlantis Express, Inc. against Standard Transportation Services, Inc. in the amount of $3,015.87 plus $211.08 prejudgment interest for a total of $3,226.95.

LET JUDGMENT BE ENTERED ACCORDINGLY.

---

**4.** This also disposes of count III of defendants' counterclaim for compensation due and owing. The other two counts of the counterclaim—negligence and breach of contract—are merely disguised equitable defenses which are not permitted in a filed rate doctrine case, *see Maislin,* 110 S.Ct. at 2766. All three counts of defendants' counterclaim should be dismissed.

**5.** An officer of Standard has submitted an affidavit comparing actual transportation rates paid by Standard to various carriers for similar shipments, showing that the rates Atlantis actually charged were "either identical or very similar to" the rates actually charged by the other carriers. *See* Roberts aff., ¶ 15 and Exh. F. He states that the filed rates now sought to be collected by Atlantis are in his view "unreasonably high." *Id.* ¶ 15. However, there is no evidence comparing the filed rates of Atlantis to the filed rates of other carriers, and no evidentiary basis for concluding that Atlantis' filed rates were unreasonable.