**WENHAM TRANSPORTATION, INC., Appellant,**

v.

**UNITED STATES GYPSUM COMPANY, Appellee.**

[Cite as *Wenham Transp., Inc. v. United States Gypsum Co.* (1993), 85 Ohio App.3d 109.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 63973.

Decided Jan. 19, 1993.

*Thomas M. Pavelko; Brouse & McDowell* and *Deborah K. Urban,* for appellant.

*Buckley, King & Bluso, Harry W. Greenfield* and *Andrew R. Kasle,* for appellee.

*Per Curiam.*

Plaintiff-appellant Wenham Transportation, Inc. ("Wenham") appeals on the accelerated docket the May 28, 1992 granting of defendant-appellee United States Gypsum Company's ("USG") motion for summary judgment. For the reasons adduced below, we affirm.

A review of the record indicates that USG is a scrap paper processor. USG contracted with Summit Trucking, Inc. ("Summit"), an independent licensed freight broker, to locate a common carrier for the cartage of scrap paper from R.R. Donnelly & Company ("Donnelly") in Warsaw, Indiana, to USG in Oakfield, New York. Summit contracted with UST Brokers, Inc. ("UST"), another freight broker, who in turn contracted Wenham to haul the scrap paper from Donnelly to USG's processing plant. Wenham contracted to haul the recyclable paper at a reduced flat rate per load.

Wenham, under bankruptcy protection, brought suit against USG for recovery of underpayments of freight charges on sixty-four shipments made to USG between October 31, 1986 and September 2, 1987. See Section 1337, Title 28, U.S.Code. The underpayment amount is the difference between the flat rate charged and the alleged tariff of Wenham on file with the Interstate Commerce Commission ("ICC").

On summary judgment, USG claimed that: (1) there was no privity of contract between itself and Wenham, thereby precluding collection by Wenham against

USG; (2) collection was precluded because USG had made payment to Summit in full pursuant to the terms of the contract between USG and Summit; and (3) Wenham's failure to file the proper tariffs with the federal Interstate Commerce Commission releases USG from any liability to Wenham. Wenham also filed a motion for summary judgment. Opposing briefs were filed against both motions.

The trial court, in its ruling on summary judgment, found that USG was entitled to judgment as a matter of law on the first and second grounds advanced by USG.

Wenham raises one assignment of error for review in which the privity issue is explored:

"The trial court erred in granting summary judgment in favor of appellee-defendant U.S. Gypsum Company by concluding that there was no privity of contract between appellant-plaintiff Wenham Transportation, Inc. and appellee-defendant U.S. Gypsum Company to support Wenham's claim for interstate trucking undercharges due. The uniform bill of lading is the basic contract of carriage and U.S. Gypsum became a party to that contract and became liable for freight charges due when it accepted each shipment that Wenham, as carrier, delivered."

In the present case, it was jointly stipulated by the parties that: (1) USG had no knowledge that Summit had contracted with UST, who in turn contracted with Wenham; (2) Wenham billed UST and was paid by UST; (3) USG paid Summit pursuant to the terms of their contract; (4) USG accepted each shipment at the time it was delivered; (5) USG paid Summit $31,243.32; (6) UST paid Wenham $30,023.25; and (7) Wenham contracted with UST to haul each shipment of recyclable material at a flat reduced rate of $500 per truckload.

The basis for Wenham's complaint is that, as a common carrier, it may not charge more or less than its tariff amount on file with the ICC, and must seek to recover any deficiency (in this case) so as not to be in violation of applicable trucking regulations. See Interstate Commerce Act, Sections 10761 and 10762, Title 49, U.S.Code.[1] See, also, *Maislin Indus., U.S., Inc. v. Primary Steel, Inc.* (1990), 497 U.S. 116, 110 S.Ct. 2759, 111 L.Ed.2d 94. We agree with appellant's interpretation of these statutes in general, but appellant neglects to mention that

---

1. Pursuant to Section 10761, Title 49, U.S.Code, a common carrier is prohibited from transporting freight at rates other than its filed tariff rates. Section 10762 mandates that carriers publish and file with the ICC tariffs containing the rates for transportation it may provide under that subtitle. Carriers have not just the right, but the duty, to recover their proper charges for services performed. *Southern Pacific Transp. Co. v. Commercial Metals Co.* (1982), 456 U.S. 336, 343, 102 S.Ct. 1815, 1821, 72 L.Ed.2d 114, 120–121.

there exists exceptions to the general rule that carriers may charge only their filed tariff rates.

One such exemption from that general rule is contained in Section 10733, Title 49, U.S.Code, titled "Rates for Transportation of Recyclable Materials," which provides:

"(a) A motor carrier of property providing transportation subject to the jurisdiction of the Commission under subchapter II of Chapter 105 of this title *may provide transportation of recyclable materials without charge or at a reduced rate.*

"(b) In this section, 'recyclable materials' means waste products for recycling or reuse in the furtherance of recognized pollution control programs." (Emphasis added.)

In *West Coast Truck Lines, Inc. v. Arcata Community Recycling Ctr., Inc.* (C.A.9, 1988), 846 F.2d 1239, a case similarly involving the shipment of scrap paper, from the Arcata Recycling Center to a reprocessor by a common carrier and a resulting lawsuit by the carrier for an undercharge as judged by the filed tariff rate, the court held that a motor carrier may charge reduced rates for the transportation of recyclable materials without filing those reduced rates in its carrier's tariff. The court in *West Coast Truck Lines* also found that "[t]he Interstate Commerce Act does not require West Coast to file an undercharge collection claim against the Arcata Recycling Center because West Coast did not have to charge its tariff rates for" the shipments. *Id.* at 1246. Without the mandate to file a collection claim for an undercharge, the court found that West Coast was bound by the terms of the reduced rate shipping contract it had made and executed with the recycling center. *Id.* at 1246. Construing the evidence in a light most favorable to Wenham, it is clear that Wenham contracted at a reduced flat rate with UST to make shipments to USG and was paid accordingly by UST for those shipments. Wenham, unable to enforce the higher rate in its filed tariff, is therefore bound by the contracted reduced rate payments and is estopped from demanding additional recovery against USG. *Id.*

■ Were Wenham able, arguably, to be entitled to recovery of undercharges, which it is not, UST, not USG, would be liable for those undercharges due to the billing and payment arrangement between Wenham and UST in their contract. See *Atlantis Express, Inc. v. Unicorn Transp. Sys.* (D.Minn.1991), 764 F.Supp. 135, 138.

*Judgment affirmed.*

PATTON, P.J., JAMES D. SWEENEY and KRUPANSKY, JJ., concur.