Plantation Foods v. C&P Distribution Service 















IN THE
TENTH COURT OF APPEALS
 

No. 10-96-114-CV

Â Â Â Â Â Â Â Â PLANTATION FOODS, INC.,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â Â Â Â v.

Â Â Â Â Â Â Â Â C.P. DISTRIBUTION SERVICE, INC.,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
 

From the 170th District Court
McLennan County, Texas
Trial Court # 94-2120-4
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

O P I N I O N
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â Â Â Â Â C.P. Distribution Service, Inc., (C.P.), is a brokerage company that locates trucking firms
to haul merchandise for its clients. In reference to the lawsuit before us, C.P. contracted with
H.O.T. Distribution Services (H.O.T.) to arrange for the shipping of poultry products for the
appellant, Plantation Foods, Inc. When H.O.T. defaulted in its payments, C.P. brought suit
against Plantation Foods. C.P. alleged that Plantation Foods was liable for payment under several
theories of recovery: (1) that Plantation Foods had guaranteed payment to C.P. in the event of
H.O.T.'s default; (2) that Plantation Foods was primarily liable to C.P. because H.O.T. was
Plantation Foods's agent; and (3) that Plantation Foods, as the consignor on the several bills of
lading at issue, was primarily liable for their payment. Plantation Foods filed a general denial 
and also raised the defenses of (1) prior payment, (2) the statute of frauds, (3) estoppel, and (4)
waiver. Trial was before the bench, which found in favor of C.P. and entered a judgment of
$32,099.00, plus pre-judgment interest and attorneys' fees.
Â Â Â Â Â Â Â Â Â Â Through nineteen points of error, Plantation Foods essentially argues ten issues on appeal:
(1) C.P. failed to plead guaranty as a means of recovery and, therefore, the trial court erred in
entering judgment in favor of C.P. on this theory; (2) the evidence is legally and factually
insufficient to support the trier of fact's rejection of Plantation Foods' statute of frauds defense;
(3) the evidence is legally and factually insufficient to support the trial court's conclusion that the
Plantation Foods employee who allegedly guaranteed payment to C.P. had either the actual or
apparent authority to make this representation; (4) the evidence is legally and factually in sufficient
to support the trial court's conclusion that H.O.T. acted as Plantation Foods' agent when
contracting with C.P.; (5) the trial court erred in failing to make a finding that H.O.T. is an
independent contractor; (6) the trial court erred in failing to make a finding that H.O.T. acted as
C.P.'s agent in collecting payment for the services C.P. rendered for Plantation Foods; (7) it,
Plantation Foods, conclusively established its defense of prior payment; (8) the trial court's
findings of fact and conclusions of law fail to support the judgment that Plantation Foods was
primarily liable to C.P. as a consignor on C.P.'s contract with H.O.T.; (9) the evidence
conclusively establishes that C.P. was estopped from recovery against Plantation Foods; and (10)
the trial court erred in calculating the rate of prejudgment interest. We reverse and render
judgment in favor of Plantation Foods.
Â 
FACTUAL BACKGROUND
Â Â Â Â Â Â Â Â Â Â The facts are generally not in dispute. In January 1992, Richard Bennett, president and
owner of C.P., and Dave Hughes, a former sales agent with C.P., telephoned Roger Gustin,
Plantation Foods' Traffic Manager, about possibly establishing a business relationship between
the two companies. Gustin informed Bennett and Hughes that H.O.T. was Plantation Foods' "in-house broker" and that any inquiries about hauling Plantation Foods' poultry products should be
directed towards it. Bennett then contacted Michael John Guidici, an agent of H.O.T., and an
agreement was reached whereby C.P. would locate truckers for Plantation Foods on an as-needed
basis.
Â Â Â Â Â Â Â Â Â Â Over the course of the next six to eight weeks, C.P. arranged for the transportation of
Plantation Foods' products on a number of different occasions. Due to the large volume of
business C.P. was receiving from H.O.T., and because C.P. was extending a greater and greater
line of credit to H.O.T. without being paid, Bennett decided to investigate the financial soundness
of H.O.T. Approximately two to three weeks after the date C.P. first began to arrange for the
transportation of Plantation Foods' poultry products, Bennett ran a credit check on H.O.T. and
then telephoned Gustin to express his concern that H.O.T. appeared to be on the verge of
bankruptcy. According to Bennett, Gustin replied, saying, "Don't worry about it. Plantation
Foods stands behind H.O.T., and we'll guarantee that you get paid for your loads."
Â Â Â Â Â Â Â Â Â Â Reassured by Gustin's reply, C.P. continued to carry loads for Plantation Foods. H.O.T.,
however, failed to pay C.P. for any of its work both prior to and after the guaranty and eventually
filed for bankruptcy protection. When C.P. learned that it would be unable to recover payment
from H.O.T. for the loads it had brokered, it requested that Plantation Foods pay for the services
it had rendered. Plantation Foods refused, and C.P. brought the instant lawsuit.
Â 
APPARENT AGENCY
Â Â Â Â Â Â Â Â Â Â In its twelfth point of error, Plantation Foods argues, among other things, that the evidence
is legally insufficient to support the trial court's implied finding that C.P. reasonably relied upon
Gustin's statements to establish H.O.T. as Plantation Foods' apparent agent. We agree.
Â Â Â Â Â Â Â Â Â Â There are three elements to an apparent agency cause of action: (1) the plaintiff must have
a reasonable belief in the agent's authority; (2) the belief must be generated by some holding out
or neglect of the principal; and (3) the party must justifiably rely on the authority. McDuff v.
Chambers, 895 S.W.2d 492, 498 (Tex. App.âWaco 1995, writ denied). Plantation Foods
restricts its argument to the first of the three elements.
Â Â Â Â Â Â Â Â Â Â We find as a matter of law that the evidence demonstrates that C.P. did not reasonably
believe that H.O.T. was Plantation Foods' agent. Bennett testified that when he had not received
payment from H.O.T. after several weeks, he decided to investigate the financial viability of
H.O.T. because he wanted to get paid for the work he had done. The only reason Bennett would
have been concerned about H.O.T.'s financial viability would be that he knew that he was being
paid by H.O.T. If Bennett had actually thought that H.O.T. was acting as Plantation Foods'
agent, Bennett would have known that his payment was to come from Plantation Foods and he,
accordingly, would not have been concerned with the financial status of H.O.T. Therefore,
Bennett, in looking to H.O.T. for his compensation, could not have justifiably relied upon
representations by Plantation Foods that H.O.T. was its agent. Plantation Foods' twelfth point
is sustained.
ACTUAL AUTHORITY
Â Â Â Â Â Â Â Â Â Â In part, Plantation Foods in its ninth point contends that the evidence is legally insufficient
to support a finding that H.O.T. had actual authority to act on Plantation Foods' behalf. We
agree.
Â Â Â Â Â Â Â Â Â Â Generally, "actual authority" means that authority that the principal intentionally confers
upon the agent, or intentionally allows the agent to believe that he possesses, or by want of due
care permits the agent to believe that he possesses. Mexico's Indus., Inc. v. Banco Mexico Somex,
S.N.C., 858 S.W.2d 577, 583 (Tex. App.âEl Paso 1993, writ denied); Morey v. Page, 802
S.W.2d 779, 784 (Tex. App.âDallas 1990, no writ). A principal may confer actual authority on
an agent either expressly or impliedly, and the existence of an agency relationship may be implied
from the conduct of the parties or from the facts and circumstances surrounding the transaction
in question. Johnson v. Holly Farms of Texas, Inc., 731 S.W.2d 641, 645 (Tex. App.âAmarillo
1987, no writ) (citing Intermedics, Inc. v. Grady, 683 S.W.2d 842, 847 (Tex. App.âHouston [1st
Dist.] 1984, writ ref'd n.r.e.)); Carr v. Hunt, 651 S.W.2d 875, 879 (Tex. App.âDallas 1983,
writ ref'd n.r.e.). The nature and extent to which the principal can control the agent is the key
factor in determining the existence of the relationship. Johnson, 731 S.W.2d at 645 (citing
English v. Dhane, 156 Tex. 231, 294 S.W.2d 709, 711 (1956); Hughes Engineering Co. v.
Eubanks, 307 S.W.2d 603, 604 (Tex. Civ. App.âFort Worth 1957, no writ)).
Â Â Â Â Â Â Â Â Â Â There is no evidence in the record that Plantation Foods had the authority to control in any
way the manner, method, or means adopted by H.O.T. in brokering truckers for Plantation Foods. 
The record conclusively demonstrates that, throughout the duration of their relationship, whenever
Plantation Foods wished H.O.T. to obtain truckers to haul its poultry products, a request would
be made and H.O.T., assuming it accepted Plantation Foods' offer, would be left to its own
devices to meet the challenge at hand. Plantation Foods played no role in how the goal was
achieved. Thus, no evidence was adduced that, under their agreement, Plantation Foods could
control the conduct of H.O.T. Plantation Foods' ninth point is sustained.
BILLS OF LADING
Â Â Â Â Â Â Â Â Â Â In its sixteenth point of error, Plantation Foods contends that the evidence is legally
insufficient to support a conclusion that it remained primarily liable to C.P. for the freight charges
at issue. We agree.
Â Â Â Â Â Â Â Â Â Â It is well-settled that the primary obligation to pay transportation costs on a bills of lading
rests with the consignor and the secondary obligation with the consignee of the goods. Southern
Pac. Transp. Co. v. Commercial Metals Co., 456 U.S. 336, 343, 102 S.Ct. 1815, 1820 (1982);
Bankruptcy Estate of United Shipping Co. v. Tucker Co., 474 N.W.2d 835, 840 (Minn. App.
1991); see 49 U.S.C.A. Â§ 13706 (West 1997). Primary responsibility for the charges may be
shifted to a third party, but the transfer must arise pursuant to statute or clearly be established in
the parties' contract or course of dealing. Missouri Pac. R.R. Co. v. Center Plains Indus. Inc.,
720 F.2d 818, 819 (5th Cir. 1983); United Shipping, 474 N.W.2d at 840.
Â Â Â Â Â Â Â Â Â Â One of the third parties to whom the primary responsibility may be shifted is an
intermediary broker. See Wenham Transp., Inc. v. United States Gypsum Co., 619 N.E.2d 110,
112 (Ohio App. 1993); United Shipping, 474 N.W.2d at 841. If the parties agree in their contract
or through the course of their conduct that the carrier shall look to the broker for payment for his
services, then the broker replaces the consignor as the party primarily responsible for the freight
charges. See Wenham Transp., 619 N.E.2d at 112; United Shipping, 474 N.W.2d at 841.
Â Â Â Â Â Â Â Â Â Â Gustin testified and the trial court found that whenever C.P. brokered an agreement for a
carrier to haul poultry products for Plantation Foods, C.P. agreed with the carrier to pay it directly
for its services. C.P. would then bill H.O.T. for the brokerage services it had provided. 
Accordingly, C.P. voluntarily assumed the primary responsibility for paying the carriers for their
freight charges and C.P. may not, via assignments from these carriers, claim a cause of action
against Plantation Foods as remaining primarily responsible for the freight charges. We sustain
Plantation Foods' sixteenth point of error.
STATUTE OF FRAUDS
Â Â Â Â Â Â Â Â Â Â Plantation Foods argues in its third point of error that the evidence is legally insufficient
to remove it from the statute of frauds. We agree.
Â Â Â Â Â Â Â Â Â Â The statute of frauds provides in pertinent part that a promise or agreement to assume the
debt of another is not enforceable unless the promise or agreement, or a memorandum of it, is in
writing and signed by the person to be charged with the promise or agreement, or someone
lawfully authorized to sign for him. Tex. Bus. & Com. Code Ann. Â§ 26.01 (Vernon 1987); Ertel
v. O'Brien, 852 S.W.2d 17, 22 (Tex. App.âWaco 1993, writ denied). C.P. concedes that
Gustin's guaranty was not memorialized in writing, but nevertheless argues that one of two
exceptions to the application of the statute of frauds appliesâthe "full performance" exception and
the "main purpose" doctrine.
Full Performance
Â Â Â Â Â Â Â Â Â Â While the statute of frauds prohibits the enforceability of certain contracts, it does not
preclude the parties from performing on an oral agreement that falls within the statute. See
Restatement (Second) Contracts Â§ 145 cmt. a (1981). Upon full performance, the statute
has no function to achieve, and the legal relations of the parties are the same as if the contract had
been enforceable. See id. Therefore, when one party fully performs a contract, the statute of
frauds is unavailable to the other who knowingly accepts the benefits and at least partly performs. 
Enochs v. Brown, 872 S.W.2d 312, 319 (Tex. App.âAustin 1994, no writ); 626 Joint Venture
v. Spinks, 873 S.W.2d 73, 76 (Tex. App.âAustin 1993, writ ref'd n.r.e.). The full-performance
exception, however, has no application to the facts of this case.
Â Â Â Â Â Â Â Â Â Â C.P. argues that it fully performed under Plantation Foods' guaranty when it obtained
truckers to haul its poultry products, and therefore, its agreement with Plantation Foods need not
have been in writing to be enforceable. The full-performance exception, however, contemplates
some action by both parties in furtherance of the agreement. The party attempting to enforce the
oral agreement is expected to have fully performed the promises he made, and the party against
whom the agreement is being enforced shall have at least partly performed and accepted some
benefit from the other party's performance. See Enochs, 872 S.W.2d at 319.
Â Â Â Â Â Â Â Â Â Â The very existence of this lawsuit clearly indicates that Plantation Foods did not perform
its part of the oral agreement because the only promise Plantation Foods allegedly made was to
pay C.P. for the services it rendered in the event H.O.T. neglected to. In the absence of some
performance on the part of Plantation Foods, C.P. may not avail itself of the full-performance
exception.
Main Purpose
Â Â Â Â Â Â Â Â Â Â Under the "main purpose" doctrine, an agreement to answer for the debt of another need
not be in writing to be enforceable if the promissary accepts primary responsibility for the debt
and his "leading object" or "main purpose" is to serve some interest of his own. Haas Drilling
Co. v. First Nat'l Bank in Dallas, 456 S.W.2d 886, 891 (Tex. 1970); Smith, Seckman, Reid, Inc.
v. Metro Nat'l Corp., 836 S.W.2d 817, 820-21 (Tex. App.âHouston [1st Dist.] 1992, no writ). 
There are three elements to an application of the doctrine:
(1) Did the promissary intend to become primarily liable for the debt, in effect making it
his original obligation, rather than to merely become a surety for the original obligor?

Â Â Â Â Â Â Â Â Â Â (2) Was there consideration for the promise?
Â 
(3) Was receipt of the consideration the promissary's main purpose or leading object in
making the promise, i.e., was the consideration given for the promise primarily for the
promissary's own use and benefit.

Haas Drilling, 456 S.W.2d at 890; Smith, Seckman, Reid, 836 S.W.2d at 821.
Â Â Â Â Â Â Â Â Â Â We will consider only the first element. The record is clear that Gustin's statements could
not plausibly be interpreted as an effort to make Plantation Foods primarily liable for H.O.T.'s
debt. Gustin's "guaranty" of payment to C.P. was essentially thatâa guaranty to pay C.P. should
H.O.T. default. Nothing was mentioned about removing H.O.T. as the party primarily liable. 
As there is no evidence to support at least one of the elements of the main-purpose doctrine, C.P.
may not rely upon it as a theory of recovery. Plantation Foods' third point of error is sustained.
Â Â Â Â Â Â Â Â Â Â Due to our disposition of Plantation Foods' third, ninth, twelfth, and sixteenth points, we
need not consider its remaining points of error. We reverse and render judgment in favor of
Plantation Foods.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â BOBBY L. CUMMINGS
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Before Chief Justice Davis,
Â Â Â Â Â Â Â Â Â Â Justice Cummings, and
Â Â Â Â Â Â Â Â Â Â Justice Vance
Reversed and rendered
Opinion delivered and filed June 11, 1997
Do not publish



o Linotype"'>Â HB 409 conclusively establishes that the Legislature expects litigants to comply with Section 263.405(b) of the Family Code.  Compliance, as the Legislature intended, would correct any wrongs 30 days after trial, as opposed to extending reversals months or years after a trial.Â Â  Â Â Â Â Â Â Â Â Â Â If a mistake is pointed out to the trial court that warrants a new trial, the trial court can immediately order a new trial, and the LegislatureÂs goal to decrease post-judgment delays is accomplished.Â  Encouraging appellants to ignore the post-judgment procedures enacted by the Legislature in 2001, not only increases the amount of time that abused and neglected children spend in foster care, it bogs down the appellate courts with mistakes that could have been quickly and easily corrected at the trial level.

Â 

House Comm. on Juvenile Justice and Family Issues, Bill Analysis, Tex. H.B. 409, 79th Leg., R.S. 2005, available at http://www.capitol.state.tx.us/cgi-bin/tlo/textframe.cmd?LEG=79&SESS=R&CHAMBER=H&

BILLTYPE=B&BILLSUFFIX=00409&VERSION=2&TYPE=A.





[3] Â Â Â Â Â Â Â Â Â Â Â Â Â  The Fort Worth court
cited the following applicable and noteworthy cases:

Â 

M.L.B. v. S.L.J., 519 U.S. 102, 110-11,
117 S.Ct. 555, 561, 136 L.Ed.2d 473 (1996) (recognizing that although the
federal constitution guarantees no right to appellate review, it is fundamental
that once a state affords that right, it must be kept free of unreasoned
distinctions that can only impede open and equal access to the courts); Evitts
v. Lucey, 469 U.S. 387, 401, 105 S.Ct. 830, 839, 83 L.Ed.2d 821 (1985)
(stating that when a state opts to act in a field where its action has
significant discretionary elements, Âit must nonetheless act in accord with the
dictates of the ConstitutionÂand, in particular, in accord with the Due Process
ClauseÂ); . . . Griffin v. Illinois, 351 U.S. 12, 18, 76 S.Ct. 585, 590,
100 L.Ed. 891 (1956) (stating that while there is no constitutional right to
appellate review, states that do grant appellate review must conduct
proceedings in accordance with Due Process and Equal Protection Clauses).

Â 

In re K.L., 91 S.W.3d at 5-6
n.16.

Â 





[4] Â Â Â Â Â Â Â Â Â Â Â Â Â  The
right to effective assistance of counsel in termination cases is also of a
constitutional dimension involving due process.Â  See In re E.L.Y., 69
S.W.3d 838, 840-41 (Tex. App.ÂWaco 2002, order); In re B.L.D., 56 S.W.3d
203, 211-12 (Tex. App.ÂWaco 2001), revÂd on other grounds, 113 S.W.3d
340 (Tex. 2002); accord In re K.L., 91 S.W.3d 1, 4-13 (Tex. App.ÂFort
Worth 2002, no pet.) (holding that indigent person has due-process right to
effective assistance of counsel); In re J.M.S., 43 S.W.3d 60, 63 (Tex.
App.ÂHouston [1st Dist.] 2001, no pet.).





[5] Â Â Â Â Â Â Â Â Â Â Â Â Â  A motion for new trial
does not extend the deadline for filing a notice of appeal or affidavit of
indigence.Â  Tex. Fam.
Code. Ann. Â§ 263.405(c).

Â 





[6] Â Â Â Â Â Â Â Â Â Â Â Â Â  Arias
argues in her supplemental brief that, because the reporterÂs record was not
filed until 16 days after the trial courtÂs termination order, she would have
been unable to prepare an adequately specific statement of points within the
15-day period.Â  See Tex. Fam. Code Ann. Â§
263.405(i) (Âa claim that a judicial
decision is contrary to the evidence or that the evidence is factually or
legally insufficient is not sufficiently specific to preserve an issue for
appealÂ).Â  Although Arias has had the same appointed attorney at trial and on
appeal, her argument highlights the trap that awaits newly appointed appellate
counsel in termination appeals and the related due-process concerns.

Â 





[7] Â Â Â Â Â Â Â Â Â Â Â Â Â  In
termination cases where appointed trial counsel does not handle the appeal and
appellate counsel is appointed more than fifteen days after the termination
order is signed (or within fifteen days but without sufficient information to
file an informed statement of points), appointed trial counsel can insulate his
or her conduct from appellate review by not including an ineffective assistance
of counsel claim in the statement of points.Â  In some cases, the only issue on
appeal may be ineffective assistance of counsel.Â  See, e.g., In re T.N.F.,
--- S.W.3d ---, 2006 WL 727713 (Tex. App.ÂWaco Mar. 22, 2006, order) (abating
appeal to trial court for evidentiary hearing on sole issue complaining of
ineffective assistance).Â  But if trial counsel did not include that claim in
the statement of points, the appellate court cannot consider it, and the entire
procedure for appointment of counsel in termination cases will have been a
Âuseless gesture.ÂÂ  In its thorough examination of section 263.405(b)Âs
requirement for a statement of points, the Fort Worth court predicted that
construing it as a jurisdictional requirement for appellate review Âwould be to
build an ineffective assistance of counsel claim into termination cases where
no statement of points is filed.ÂÂ  S.J.G., 124 S.W.3d at 243 n.2.Â  And
we recently noted that the enactment of subsection 263.405(i) would heighten
the importance of effective assistance of counsel in the post-judgment stage of
termination cases.Â  See In re K.K., 180 S.W.3d 681, 683 n.1 (Tex.
App.ÂWaco 2005, order).

Â 





[8] Â Â Â Â Â Â Â Â Â Â Â Â Â  Another issue is whether
trial courts are actually holding the hearing mandated by subsection
263.405(d).Â  I cannot recall an appellate record reflecting such a hearing.